**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**UNITED STATES OF AMERICA**

**v.** **Case No. 3:23-cr-153-WWB-LLL**

**DANIELLE NICOLE DEVILBISS**
**___________________________________/**

## DEFENDANT'S SENTENCING MEMORANDUM

*"The past is never dead. It's not even past. All of us labor in webs spun long before we were born, webs of heredity and environment, of desire and consequence, of history and eternity."*[1]

## Case History

Ms. Devilbiss' is before the Court today in what started as the seemingly harmless scrolling of YouTube videos involving animals doing silly things. It was through the comment section on these YouTube videos that she learned she could find more information about the monkeys and their owners through Telegram, commonly known as "TG". She became curious by some of the videos she saw, and decided to see what more she could find out.

Upon discovering these animal video groups, she discovered that a fee was required to join. She paid "Mr. Ape", $20 on April 12, 2022. Then, on April 27,2022, she paid a $40 fee join the group administered by "Torture King", aka Mike McCarthy, commonly referred to as CI 1. In that group people were posting

1 William Faulkner, Requiem for a Nun (1951).

videos of monkeys being tortured and abused, and then commenting on what they saw. Some made jokes about the videos and others made comments about their hatred of the animals. Ms. Devilbiss participated in many of these discussions and thousands of other discussions unrelated to animal torture.

Through this group Ms. Devilbiss developed a morbid fascination with the group's content and its members. Due in large part to her own mental health issues and isolation, she saw this online group of people as her primary friend group. She found acceptance and community within the group, but it also led her to the darkest point in her life. On May 4, 2022, Ms. Devilbiss sent "Sadistic Kitten" (aka C2) $40 on the pretense that C2 needed money to help get her granddaughter in daycare. These three payments, totaling $100 were the only ones Ms. Devilbiss made in the production or distribution of these videos.

Between May of 2022 and June of 2023, the group was administered by six different people who had the same access and abilities. Eventually, Torture King and Sadistic Kitten were discovered by Homeland Security agents, and after their involvement with law enforcement, they stepped back and appointed others to run the group in their absence. Ms. Devilbiss was one of these people. The group was dissolved in June 2023. Ms. Devilbiss' home was raided by the H.S.I. on October 31, 2023. She was taken into custody at that time and has remained in custody since then. On her seized devices, H.S.I. found 27 videos that are the

subject of this case. After the group was dissolved in June of 2023 and until her arrest, there is no evidence that Ms. Devilbiss continued to seek or view any images depicting violence towards animals.

Ms. Devilbiss entered a plea of guilty pursuant to a Notice of Maximum Penalties on February 13, 2024. Her plea was accepted by this Court on February 22, 2024.

## History and Characteristics of Ms. Devilbiss

### Personal and Family Life:

Ms. Devilbiss is 35 years old, with no significant prior criminal record. Her life has been marked by repeated trauma from substance abuse, physical violence, and abandonment. She appears to have cycled through a series of toxic relationships and does not seem to be aware how her tumultuous childhood shaped them.

Ms. Devilbiss' parents separated when she was a young child and her father left Florida for Texas. According to her father, Michael DeVilbiss, Ms. Devilbiss would visit him in Texas, once or twice a year, but she spent the "vast majority" of her childhood in Florida with her mother. He eventually re-married and had two children, ages 14 and 16 years old, from that union. At first, Ms. Devilbiss did not acknowledge her stepsiblings but later stated that she did not speak to them often. Ms. Devilbiss describes a volatile relationship with her

stepmother and believes that she heavily influenced her father's decision to not play an active role in her life.

When Ms. Devilbiss was six years old, her mother married Ronald Batley, her former stepfather, who has struggled with alcoholism for his entire adult life. Ms. Devilbiss remembers resenting Mr. Batley as they seemed to fight for her mother's love and attention. His alcoholism escalated during her adolescence, as did the arguments between him and her mother. She recalled several instances of Ron picking her up from high school so drunk that she had to take the keys and drive them both home. She recalls heated arguments between her mother and Ron over his alcohol abuse issues, resulting in their eventual divorce.

When Ms. Devilbiss was preparing for her senior year of high school, her mother left Mr. Batley and moved back to Texas. Because Ms. Devilbiss did not want to switch schools her senior year, she moved in with her high school boyfriend, Samuel Turner. However, neither her mother nor father approved of this arrangement, and they stopped speaking to her or providing financial support for her for several years. She became extremely lonely and depressed and eventually dropped out of high school. She continued to live with her boyfriend and shortly after dropping out of high school became pregnant with Mr. Turner's a child. Ms. Devilbiss eventually gave birth to (I.T). During this time, she was able to attain her G.E.D. and even took a few college courses. However, that

relationship ended and Ms. Devilbiss found herself alone and afraid. After this relationship with Mr. Turner ended, Ms. Devilbiss began a series of harmful and often dangerous relationships following her mother's footsteps, even though she swore her life would be different.

**Relationship History and Domestic Violence**

Ms. Devilbiss married Mr. Schafer in 2012, bringing her daughter I.T., with her. The two struggled financially and eventually moved to Texas to be closer to family and start over. But, by 2014 the two had separated. She noted the marriage became even more strained when her mother moved into their home following unsuccessful suicide attempt. During her marriage to Mr. Schafer, Mr. Turner repeatedly called child protective services to try and take custody of I.T., making claims of sexual abuse and neglect, against Mr. Shafer. These reports were deemed to be unfounded, but the allegations put significant stress on Mr. Schafer and Ms. Devilbiss.[2] Until one day, Mr. Schafer took off to California abandoning Ms. Devilbiss in Texas without warning. During this period, I.T. went to live with her biological father in Florida because he offered more stability.

After she was abandoned by Mr. Schafer, Ms. Devilbiss moved in with Roberto Javier Saenz because it was the only solution she knew. She had one child with Mr. Saenz, a son (M.S.), who is now nine years old. She reported

2 DCF Records Attached as Exhibit 1

experiencing physical and mental abuse at the hands of Mr. Saenz, specifically, towards the end of their relationship in 2019. Records from the San Antonio Police Department confirm that in April 2019, Ms. Devilbiss suffered an injury to her left hand after Mr. Saenz assaulted her during an argument a month prior. She reported to law enforcement that she delayed reporting the incident due to her fear that Roberto would hurt her for reporting the altercation to law enforcement.[3] Ms. Devilbiss left Texas shortly after this incident and while her son remained with Mr. Saenz. Mr. Saenz sought to terminate her parental rights and was awarded full custody of M.S. when Ms. Devilbiss was too afraid to return to court and fight for her son.

Ms. Devilbiss returned to the Jacksonville, Florida area to be closer to her eldest daughter I.T., and soon began a relationship with Mr. Jacquez Rickerson. Ms. Devilbiss suffered severe domestic violence during this relationship. She recalled physical, mental, and sexual abuse. She revealed that she kept her suffering to herself out of embarrassment and the isolation caused by the relationship. One daughter, X.R., age 3, was born as a result of this relationship. Ms. Devilbiss was with X.R. everyday from the moment she was born until the day she was arrested. Now, X.R. is now in the custody of her paternal great-grandmother and was recently diagnosed with autism spectrum disorder. She

3 San Antonio Police Records Attached as Exhibit 2

remains non-verbal.

The abuse that Ms. Devilbiss suffered at the hands of Mr. Rickerson was thoroughly documented by Jacksonville Sheriff's Office, Duval County Clerk Office, and Department of Children and Families, an excerpt of one instance is below:

In June 2021, Ms. Devilbiss filed for an injunction after Mr. Rickerson was arrested for battering her in Duval County docket no. 2021-MM-6346. According to the Petition for Injunction, Ms. Devilbiss was in the process of putting the baby down after she awoke for a bottle and diaper change, but Mr. Rickerson woke up and insisted on taking the baby. Despite Ms. Devilbiss's resistance, Mr. Rickerson pried X.R. from Ms. Devilbiss's arms. When Ms. Devilbiss took out her phone to call her mom and Ron for assistance leaving the residence, Mr. Rickerson, with baby X.R. still in his arms, strangled Ms. Devilbiss. When she attempted to leave the apartment and notify the neighbors for help, Mr. Rickerson blocked the exit, and again strangled Ms. Devilbiss, lifting her off the ground, while slamming her head repeatedly into the wall. When she dropped her cell phone, Mr. Rickerson picked it up and threw it outside the apartment door with a threat that if she left, he would lock her outside. Eventually, Ms. Devilbiss was able to retreat outside and placed a call to 9-1-1, however, a neighbor heard her cries for help and had already contacted law enforcement. Upon arrival of police,

Mr. Rickerson barricaded himself and X.R. in the family home and law enforcement had to kick down the door to make entry.[4]

Due to the recorded domestic violence, DCF contacted both Ms. Devilbiss and Mr. Rickerson to complete a risk assessment for X.R. , an excerpt of worker observations is as follows:

> "Father does not acknowledge his part in anything. He is showing "Evidence" of mother but is actually showing videos of him berating and antagonizing her. The father's past shows history of domestic violence, similar to what is happening now. The father is trying to go after the mother's family and turn her entire family against her. The father continues to paint himself as a victim, when he has been verbally, emotionally and physically abusive to the mother of his child."

When Ms. Devilbiss courageously left her abusive relationship, she found a haven at Hubbard House. Undeterred Mr. Rickerson continued to harass and threaten Ms. Devilbiss. To make matters worse, she indicated that she lost her job at Baptist for a "no call no show" after she had to miss work while fleeing her abusive relationship and seeking shelter at Hubbard House.

After escaping her abusive relationship with Mr. Rickerson, Ms. Devilbiss was left jobless, friendless, and utterly dependent on her mom and stepfather Mr. Batley to provide basic necessities for her and her child. She described the time as "dark" and "lonely". She became agoraphobic and would only leave the house

4 Police Reports Attached as Exhibit 3

for short periods. Ms. Devilbiss was terrified of her pain both physical and emotional.

It was during this time, that Ms. Devilbiss retreated into the world of dangerous online communication. She is embarrassed and ashamed about what she did in this case.

The only explanation she can provide is that she found a community of individuals who cared about her, at a time when she needed human connection the most. The group members on Telegram rallied together to provide funds to give her when she was unable to afford diapers, wipes, and formula. She found a group of individuals who would listen to her vent, without blaming her or dismissing her feelings. They seemed to be as outwardly depraved as she inwardly felt. They did not judge her for the disaster her life had become. She found what she had been searching for since childhood, belonging and acceptance and a safe place to share her thoughts, feelings, and ideas.

Ms. Devilbiss is the first to admit, that nothing excuses her conduct. She does not believe she could ever hurt an animal and does not want to. She acknowledges that it is difficult to make sense of the seemingly twisted realization that one can perpetrate the same things that were done to them, which in essence is the cycle of violence.

**Parental Turmoil**

Records also reflect a tumultuous relationship with her mother. She described her mother as “hot headed”, and records received from the San Antonio Police Department confirm Cynthia Rohm’s quick temper. In a report dated September 12, 2014, Ms. Rohm was involved in an argument with a stranger, that turned physical, in the middle of an aisle at their local grocery store. Ms. Devilbiss is listed as a witness to this incident.

Despite his alcohol abuse issues, Mr. Batley remains the primary father figure in Ms. Devilbiss’ life. Despite divorcing Ms. Rohm, a decade prior, Mr. Batley provided her with a place to live to prevent her from being homeless. Mr. Batley also provided Ms. Devilbiss and her two daughters refuge when she was fleeing an abusive relationship with Mr. Rickerson.

**Mental Health**

Despite escaping her abusive relationship, Ms. Devilbiss has been unable to escape the emotional damage from her traumatic upbringing and cyclical toxic relationships. Craft Behavioral Health was treating her for PTSD, Anxiety, and Depression, at the time of this offense. She is prescribed Lexapro by Baker County Detention Center to deal with the stress and anxiety she feels. Her greatest fear is that her daughter X.R., will not remember her.

She believes her current incarceration has compounded her PTSD and

believes she would benefit immensely from mental health treatment.

**SUBSTANCE ABUSE:**

Ms. Devilbiss reported a 10-year struggle with opioid dependency, the result of suffering a broken back in 2013, after falling down a set of steps. Ms. Devilbiss was prescribed opiates by her doctor for pain management and as a result, she became addicted. She reported several unsuccessful attempts to wean herself off pain medication before seeking out Medication Assisted Treatment (MAT). From June 2019- October 2023, she sought treatment at North Florida Comprehensive Treatment Center. Records reflect weekly appointments for counseling, random UAs, and medication management. In the four years that Ms. Devilbiss had been attending the North Florida Comprehensive Treatment Center, she was an active participant in her sobriety. She regularly spoke with her counselor about managing her stress and ADHD with things like journaling and creating a planner to keep her organized. She processed the domestic violence she suffered in her relationship and her multiple contacts with law enforcement as the victim of domestic violence.

Ms. Devilbiss continued to show up for treatment despite her volatile relationships. She continued to show up throughout her pregnancy, and she continued to show up despite the instability she faced when she decided to leave her abusive partner. She often noted that her children were her driving force to

reaching and maintaining her sobriety, and her goal was to be done with MAT by January 2024.

In treatment notes provided by North Florida Treatment Center, Ms. Devilbiss was actively working on "family of origin issues and how sometimes children are made to take on feelings of guilt and shame over the mistaken belief that the issues are their fight or that they are responsible for fixing those issues." [5] While Ms. Devilbiss was trying her best to get a handle on her past and deal with her emotional trauma, it was still a struggle, and this case was the result of years of trauma, loneliness, and poor coping skills.

**<u>Nature and Characteristics of the Offense</u>**

This offense involved participating in an online group that shared disturbing videos of young monkeys. These videos are generally protected by the First Amendment unless they are "obscene". [6] The vast majority of the videos possessed by Ms. Devilbiss were not a crime because they are protected speech. However, some of the videos shared in the group rise to the level of what the law considers to be "obscene". Ms. Devilbiss received no economic benefit from her participation in viewing these videos. Ms. Devilbiss also received no sexual gratification from this experience. For her, it was cathartic part of her PTSD. She

---

5 Excerpts North Florida Treatment Center attached as Exhibit 4

6 *United States v. Stevens*, 559 U.S. 460 (2010).

felt some power and control in not being the one who was abused. As someone, who has not been the victim of sustained abuse it may be difficult to understand but the phenomenon has been repeatedly scientifically documented.[7]

Many traumatized people expose themselves, seemingly compulsively, to situations reminiscent of the original trauma. These behavioral reenactments are rarely consciously understood to be related to earlier life experiences. This "repetition compulsion" has received surprisingly little systematic exploration during the 70 years since its discovery, though it is regularly described in the clinical literature. For Ms. Devilbiss, she was re-living her domestic violence scenarios by watching violence against animals.

Compulsive repetition of the trauma usually is an unconscious process that, although it may provide a temporary sense of mastery or even pleasure, ultimately perpetuates chronic feelings of helplessness and a subjective sense of being bad and out of control. Gaining control over one's current life, rather than repeating trauma in action, mood, or somatic states, is the goal of treatment.

Ms. Devilbiss had started treatment but had not felt comfortable sharing with her counselors this outlet that she had discovered because of its socially taboo

---

[7] Bessel A. van der Kolk, MD PSYCHIATRIC CLINICS OF NORTH AMERICA, Volume 12, Number 2, Pages 389-411, June 1989. *The Compulsion to Repeat the Trauma Re-enactment, Revictimization, and Masochism*

nature. It is important that the animals she viewed were so close to humans because it shows that she was identifying with the monkeys as herself. She saw herself in the tortured animals. It was a way for her to gain power over the loss of power she had been experiencing in her life when she was being abused by her partners. It seemed safer to her because it was happening a million miles away. It seemed to her like she was not really harming anyone. She was not commissioning the videos. She was not paying the videographers herself for the animals to be hurt. She was just watching them. It was all over the computer, but she herself knew it was wrong. She was disgusted with herself and her own behavior, but she could not stop watching it. When she commented on them in a powerful way, she was winning control over the situation.

Ms. Devilbiss and sixty members of an online community shared and watched these videos. She commented about the videos not being violent enough or that she found it amusing. She said she would pay money to other group members for them to get more content (but she didn't). While others sent money to foreign countries for people to torture the monkeys in sick and sadistic ways, Ms. Devilbiss did not. She journaled about monkeys being tortured. She made jokes about the suffering monkeys. Ms. Devilbiss made comments so that she could prove to the others that she was like them, because she wanted to belong. Ms. Devilbiss saved the abusive content from the group onto her computer and

her phone. She theorized about how the group could monetize the suffering of monkeys but never acted on it because she knew it was wrong while also feeling a connection for the first time in years.

Ms. Devilbiss did not create this group. C.I 1 did. She did not profit from this group. CI 1 did. She did not recruit members. C.I 1 arbitrarily named her an "admin". This was essentially a title only. All she did was restrict some people from access to some materials. She **never** paid any videographers to make content. She **never** made the subscription group she theorized about. Ms. Devilbiss **never** took any concrete steps toward, nor was she ever approved to adopt a monkey. She **never** traveled to Ocala or Gainesville to see monkeys in person. Ms. Devilbiss did tell many lies to the group. She lied about her job (as a surgical tech- she was not) and what she said she was doing for perceived status in the group. She lied about paying for videos (she did not- none of them were "on her"). She lied about contacting videographers for violent content (she did not). She **never** tortured a monkey. Ms. Devilbiss **never** tortured anything. Most importantly, she **never** received sexual gratification from the videos.

**Promoting Respect for the Law**

Ms. Devilbiss acknowledges the severity of this offense. She is horrified by her conduct. As she has had time to sit and reflect on her actions, she accepts that this is not only disgusting, but that she clearly needs intense and prolonged

therapy. She has become a social pariah; her name and likeness have been put on display for all to know and hate. Ms. Devilbiss is now a convicted felon. She has lost custody of all her children. Any sentence she receives, will clearly show respect for the law.

**General and Specific Deterrence**

Ms. Devilbiss is already specifically deterred from this conduct in the future. She has lost everything because of this criminal prosecution. There is little need for general deterrence for this conduct as its repulsive nature is deterrence enough for those who do not have severe mental illness. The idea of abusing an animal for sexual gratification is beyond the comprehension of most people. Furthermore, criminal prosecution is scientifically proven to be an ineffective deterrent for general criminal conduct. [8]

**Elimination of Disparate Sentencing**

There are very few documented cases of this type for this court to consider for disparate sentencing arguments however, there are some to note. One of Ms. Devilbiss' co-conspirator was recently sentenced to 48 months in case *United States v. Noble*, 6:23-cr-181-MC (D. Or. 2023). We submit that his case was factually dissimilar because he was a member of the Armed Forces who was

[8] Mann H, Garcia-Rada X, Hornuf L and Tafurt J (2016) What Deters Crime? Comparing the Effectiveness of Legal, Social, and Internal Sanctions Across Countries. *Front. Psychol.* 7:85. doi: 10.3389/fpsyg.2016.00085

dishonorably discharged for fraud and because he personally paid to have torture video curated and added to the group. Ms. Devilbiss did not.

Another person who has been convicted of a similar crime was sentenced to a year and a day. He personally sent money to have baby monkeys abused in Indonesia in *United States v. Herrera*, Case No. 23-cr-76-wmc (W.D. Wis. 2022). In that case, Herrera sent detailed instructions to the videographer asking that the monkey be physically abused in specific violent ways. The videographer complied with these requests and sent the video to Herrera via an encrypted messaging application. In sentencing Herrera, Judge Conley remarked on the abhorrent nature of the video and pointed out that Herrera did not just view the video but played a role in its production. The government believes his case is factually less severe than Ms. Devilbiss's but does not state why or provide any support for that argument.

In another similar case *United States v. Scott* 1:21-cr-49-SEB-DLP Krystal Cherika Scott plead guilty to two counts of animal crushing after filming **herself** killing five dogs, five cats, and 11 unborn kittens on social media. She was sentenced to 30 months in prison. Ms. Scott personally slaughtered 21 animals live on social media. Ms. Scott's actions were instinctually more abhorrent than Ms. Devilbiss' yet, the government still believes Ms. Devilbiss deserves to serve 21 more months in prison than Ms. Scott did. This kind of sentencing disparity is

why 3553 (a) exists.

We submit that taken in consideration with these other cases, the government's request in this case not only disparate it is also unjust.

**Conclusion**

*"It was as though she realized for the first time that you—everyone—must, or anyway may have to, pay for your past; that past is something like a promissory note with a trick clause in it which, as long as nothing goes wrong, can be manumitted in an orderly manner, but which fate or luck or chance can foreclose on you without warning."*[9]

Ms. Devilbiss comes before the court as a daughter and mother with a long life ahead of her. She is determined to make the most of the opportunity this court provides to her, to seek treatment opportunities in the Bureau of Prisons to heal herself and become a productive and healthy member of society. For these

[9] William Faulkner, Requiem for a Nun (1951).

reasons, she humbly requests a guidelines sentence of 21 months, as she believes it is sufficient, but not greater than necessary, to comply with the § 3553(a) factors.

Dated: June 11, 2024

Respectfully submitted,

A. FITZGERALD HALL
FEDERAL DEFENDER, MDFL

*/s/Kathryn Sheldon Esq.*
Kathryn E. Sheldon, Esq.
Assistant Federal Defender
Florida Bar No. 1019538
200 W. Forsyth St, Ste. 1240
Jacksonville, Florida 32202
E-Mail: Kathryn_sheldon@fd.org
Counsel for the Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on June 11, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/Kathryn Sheldon, Esquire*
Assistant Federal Defender